JAN 09 2019

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

Plaintiff,

v.

TAE YOUNG KIM,

Defendant.

CASE NO. **CR19 - 004 JLR**

INFORMATION

The United States Attorney charges that:

## COUNT 1
### (Wire Fraud)

At all times relevant to this Information:

**A.    Introduction**

1.    TK Mac Enterprises, Inc. ("TK Mac") purchased and sold wholesale cigarette and non-cigarette tobacco products.  TK Mac has been licensed with the Washington State Department of Revenue (WADOR) as a cigarette wholesaler since May 2002, and as a tobacco product distributor since September 2005.  TK Mac had two retail locations, one in Federal Way, Washington ("TK Mac South"), and the other in Lynnwood, Washington ("TK Mac North").

2.    One Stop Shopping, Inc. ("One Stop") was established in 2015. Washington State Secretary of State records listed D.T. as the governing person holding

INFORMATION/KIM - 1

1  all offices of One Stop.  One Stop had one retail location located in Lynnwood,

2  Washington.  One Stop sold tobacco products, cigarettes and general merchandise.

3      3.      From 2001 through at least April 19, 2017, TAE YOUNG KIM operated

4  and managed TK Mac.  Washington State Secretary of State records listed TAE YOUNG

5  KIM as the governing person holding all offices of TK Mac.  TAE YOUNG KIM shared

6  in all business and financial decisions related to TK Mac and signed its corporate tax

7  returns.

8      4.      From no later than 2012 through April 19, 2017, H.K. operated as the true

9  owner of TK Mac and One Stop.  H.K. and TAE YOUNG KIM oversaw the business and

10  financial operations of TK Mac.

11      5.      Riverside Smoke Shop ("Riverside"), D&A Smoke Shop ("D&A") and

12  Valley Smoke Shop ("Valley") were commonly owned smoke shops located on the

13  Puyallup Indian Reservation (collectively "Tribal Smoke Shops").  The true owner of the

14  Tribal Smoke Shops was A.P.  The manager of Riverside was T.S.

15      **B.      Washington State Tobacco Tax Background**

16      6.      Under Washington State law all non-cigarette tobacco products were

17  classified as "tobacco products."

18      7.      A "distributor" of tobacco products meant (a) any person engaged in the

19  business of selling tobacco products in this state who brings, or causes to be brought, into

20  this state from without the state any tobacco products for sale, (b) any person who makes,

21  manufactures, fabricates, or stores tobacco products in this state for sale in this state, (c)

22  any person engaged in the business of selling tobacco products without this state who

23  ships or transports tobacco products to retailers in this state, to be sold by those retailers,

24  (d) any person engaged in the business of selling tobacco products in this state who

25  handles for sale any tobacco products that are within this state but upon which tax has not

26  been imposed.  RCW 82.26.010(8).

27      8.      Tobacco products were taxed at various rates depending on the product.

28

INFORMATION/KIM - 2

9.      Under Washington State law tobacco taxes were "levied and collected" upon the sale, handling, or distribution of all tobacco products.   RCW 82.26.020(1). The tobacco taxes "must be imposed at the time the distributor (a) brings, or causes to be brought, into this state from without the state tobacco products for sale, (b) makes, manufactures, fabricates, or stores tobacco products in this state for sale in this state, (c) ships or transports tobacco products to retailers in this state, to be sold by those retailers, or (d) handles for sale any tobacco products that are within this state but upon which tax has not been imposed." RCW 82.26.020(2).

10.      Federally recognized Indian tribes and enrolled tribal members conducting business within the boundaries of an Indian reservation were exempt from state taxation for tobacco products under RCW 82.26.020.  RCW 82.26.010(14).

11.      If a tobacco distributor such as TK Mac sold tobacco products to a federally recognized Indian tribal smoke shop, the tobacco tax paid on the product could be claimed as a credit by the distributor on the next WADOR tax return filed.

12.      State excise taxes were also collected from companies conducting wholesale transactions, including tobacco distributors, on gross receipts from wholesaling.  "Wholesaling" is meant to report sales of tangible personal property and/or labor performed for persons who resell the same in the normal course of business.

**C.      Scheme and Artifice to Defraud**

13.      Beginning no later than January 1, 2014, and continuing through April 19, 2017, at Federal Way, within the Western District of Washington, and elsewhere, TAE YOUNG KIM, H.K., A.P., T.S., and others known and unknown to the United States Attorney, knowingly devised a scheme and artifice to defraud the Washington State Department of Revenue (WADOR) and others, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, as further described below.

INFORMATION/KIM - 3

14.     The essence of the scheme and artifice to defraud was that TAE YOUNG KIM and H.K. caused TK Mac to purchase tobacco products from the Tribal Smoke Shops, located on the Puyallup Indian Reservation, and then caused the submission of monthly Combined Excise Tax Returns (CETRs) to WADOR on behalf of TK Mac, which drastically and fraudulently understated the amount of chewing tobacco products purchased from the Tribal Smoke Shops, and which fraudulently claimed a tax credit for non-existent and sham tobacco product sales to the Tribal Smoke Shops, both of which caused WADOR to levy and collect far fewer taxes on TK Mac than those actually owed.

**D.      Manner and Means**

### *Tobacco Purchases and Sales*

15.     It was part of the scheme and artifice to defraud that, beginning no later than January 1, 2014 and continuing until April 19, 2017, TAE YOUNG KIM and H.K. caused TK Mac to purchase tobacco products, including chewing tobacco, from the Tribal Smoke Shops, located on the Puyallup Indian Reservation, the majority of which purchases were made in cash, and a minority of which purchases were made by check.

16.     It was part of the scheme and artifice to defraud that the Tribal Smoke Shops provided two separate invoices to TK Mac for its purchase of tobacco products: one invoice for tobacco products purchased with cash, and a separate invoice for tobacco products purchased with check.  The Tribal Smoke Shops further tracked all payments by TK Mac for tobacco products against a line of credit the Tribal Smoke Shops had extended to TK Mac.

17.     It was further part of the scheme and artifice to defraud that TAE YOUNG KIM and H.K. directed that the invoices be maintained separately at TK Mac.  The purpose of the dual invoices and the separation of invoices was to facilitate the under-reporting scheme and to avoid detection of the fraud scheme in the event of an audit.

INFORMATION/KIM - 4

18.     It was further part of the scheme and artifice to defraud that TAE YOUNG KIM and H.K. caused the tobacco purchased with cash not to be reported to the WADOR for assessment of tax.

19.     It was further part of the scheme and artifice to defraud that TAE YOUNG KIM and H.K. caused TK Mac to sell tobacco products, including chewing tobacco, from TK Mac to various retailers throughout the Puget Sound region, including One Stop.  A significant portion of these sales were conducted in cash.

20.     It was further part of the scheme and artifice to defraud that TAE YOUNG KIM and H.K. purposefully avoided reporting TK Mac's cash receipts to WADOR and to the United States Internal Revenue Service for purposes of determining tax owed.

21.     It was further part of the scheme and artifice to defraud that TAE YOUNG KIM and H.K. caused cash proceeds from the sale of tobacco products and other items to be stored in a safe at TK Mac's Federal Way location.

### *Fraudulent Cash-for-Check Swap*

22.     It was further part of the scheme and artifice to defraud that TAE YOUNG KIM, H.K., A.P., T.S., and other individuals known and unknown to the U.S. Attorney, devised and executed an arrangement to deceive WADOR through a false tobacco product credit arrangement.

23.     It was further part of the scheme and artifice to defraud that a TK Mac representative, at the direction of TAE YOUNG KIM and H.K., would transport cash generated by TK Mac and One Stop from the sale of untaxed tobacco products, among other things, to Riverside.

24.     It was further part of the scheme and artifice to defraud that the Tribal Smoke Shops, acting through A.P., T.S., and other individuals known and unknown to the U.S. Attorney, provided checks in the same amount as the cash transported to Riverside.  The checks were written on the accounts of D&A and Riverside and were signed by T.S.

INFORMATION/KIM - 5

25.     It was further part of the scheme and artifice to defraud that TAE YOUNG KIM and H.K. caused false invoices matching the check amounts to be delivered to Riverside or D&A showing the sale of tobacco products from TK Mac to Riverside or D&A; however, in fact, no tobacco products changed hands in the transaction.

26.     It was further part of the scheme and artifice to defraud that TAE YOUNG KIM and H.K. caused the checks received from Riverside and D&A to be deposited into TK Mac's bank account.

27.     It was further part of the scheme and artifice to defraud that TAE YOUNG KIM and H.K. claimed the check payments from Riverside and D&A represented sales of tobacco products to a federally recognized Indian tribal tobacco store with on-reservation delivery.   TAE YOUNG KIM and H.K. then fraudulently claimed these payments as "credits" on TK Mac's CETRs.

28.     It was further part of the scheme and artifice to defraud that TAE YOUNG KIM and H.K. caused copies of the false invoices to be maintained at TK Mac.  One purpose of the false invoices was to substantiate the sham sales and credits in the event of an audit.

### *Submission of False CETRs and Payment of Tax*

29.     It was further part of the scheme and artifice to defraud that TAE YOUNG KIM and H.K. caused the submission of monthly CETRs to WADOR on behalf of TK Mac, which understated the amount of tobacco products purchased and claimed a fraudulent tax credit, thereby causing significantly less tax to be assessed than actually owed.

30.     It was further part of the scheme and artifice to defraud that TAE YOUNG KIM and H.K. caused wire transfers to be made from TK Mac's business bank account to WADOR for the amount of taxes shown to be due based on the false CETRs, which wire transfers involved interstate wire transmissions to BBCN Bank servers.

31.     It was further part of the scheme and artifice to defraud that TAE YOUNG KIM did not report cash receipts as wholesale receipts on TK Mac's CETRs.

INFORMATION/KIM - 6

32.     As a result of the above-described scheme and artifice to defraud, TAE YOUNG KIM and others known and unknown caused TK Mac to avoid the payment of approximately $9.5 million in excise tax due to the State of Washington between January 1, 2014 and April 17, 2017.

**E.     Execution of the Scheme and Artifice to Defraud**

33.     As a representative example of the scheme, on or about April 28, 2015, at Federal Way, within the Western District of Washington, and elsewhere, TAE YOUNG KIM, having devised a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire in interstate commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme or artifice: namely a wire transfer of $48,405.37 from TK Mac's Company's BBCN Bank Account No. xxxx-0995 to the Washington State Department of Revenue (WADOR) bank account, which wire transfer involved a wire transmission from Washington to another State.

All in violation of Title 18, United States Code, Section 1343 and 2.


**COUNT 2**
**(Filing a False Tax Return – TK MAC 2015)**

34.     The United States re-alleges and incorporates paragraphs 1-33.

35.     On or about September 15, 2016, at Federal Way, within the Western District of Washington, and elsewhere, TAE YOUNG KIM, a resident of Auburn, Washington, did willfully make and subscribe a 2015 Form 1120S U.S. Income Tax Return for an S-Corporation for TK Mac, which was verified by a written declaration that it was made under the penalties of perjury, and which TAE YOUNG KIM did not believe to be true and correct as to every material matter. That 1120S Tax Return, which was prepared and signed in the Western District of Washington and was filed with the Internal

INFORMATION/KIM - 7

1   Revenue Service, stated that TK Mac received gross receipts of $15,457,437.00, whereas,

2   as TAE YOUNG KIM then and there knew, TK Mac had received gross receipts for tax

3   year 2015 of at least $20,991,190.12.

4          All in violation of Title 26, United States Code, Section 7206(1).

7          DATED this ___9th___ day of ___January___, 2019.

ANNETTE L. HAYES
United States Attorney

ANDREW FRIEDMAN
Assistant United States Attorney

MATTHEW D. DIGGS
Assistant United States Attorney

INFORMATION/KIM - 8